IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES OWENS, # K-83253,

        Plaintiff,

    vs.                          Case No. 17-cv-1387-DRH

WEXFORD HEALTH SOURCES, INC.,
NICHOLAS LAMB (Official Capacity),
CUNNINGHAM,
LORI JACKMAN,
McFARLAND,
P.A. PHILLIPPE,
and JOHN DOE (Medical Personnel),

        Defendants.

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff, currently incarcerated at Robinson Correctional Center ("Robinson"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arose while he was confined at Lawrence Correctional Center ("Lawrence"). Plaintiff claims that Defendants failed, over a period of years, to consistently provide him with medications that had been prescribed to him, causing him to miss many doses after his medications ran out. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss

any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance*

*Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that Plaintiff's claims do not survive threshold review under § 1915A.

**<u>Plaintiff's Litigation History Relating to These Claims</u>**

Initially, the Court notes that two cases previously filed by Plaintiff in this Court (which were consolidated into a single case, No. 15-cv-1169) raised similar claims to those included in the present case. *Owens v. Duncan, et al.*, Case No. 14-cv-510-MJR-SCW (filed May 5, 2014); and *Owens v. Duncan, et al.*, Case No. 15-cv-1169-MJR-SCW (filed Oct. 21, 2015).

In these cases (both now under Case No. 15-cv-1169), Plaintiff claimed that between February 2014 and October 2015, Dr. Coe (physician at Lawrence) prescribed him two medications – an antihistamine (Chlorpheniramine, also known as "Chlor-Trimeton" or "CTM") for allergy symptoms, and Naproxen for hip pain. However, Coe and other Defendants failed or refused to refill those prescriptions consistently, leaving him without the relief they offered. (Order of Jan. 26, 2018, granting Defendants' Motion for Summary Judgment, Doc. 115 in Case No. 15-cv-1169). Plaintiff brought claims of deliberate indifference to his serious medical needs against 5 Defendants, including Phillippe, who is also a Defendant herein. Another Defendant in the present case, Warden Lamb, was a Defendant in Case No. 15-cv-1169 in his official capacity only. Plaintiff also claimed in Case No. 15-cv-1169 that Coe and Phillippe retaliated against him by

refusing to provide him with CTM and Naproxen, because he had previously sued them.  Each of these claims was dismissed on January 26, 2018, and judgment was entered on January 30, 2018.

## The Complaint

In the present Complaint, Plaintiff notes that he attempted to file an amended complaint in Case No. 15-cv-1169-MJR-SCW to include the claims he sets forth herein, but that request was denied.  (Doc. 1, p. 3; *see also* Doc. 91, Aug. 1, 2017, in Case No. 15-cv-1169).

Plaintiff claims that according to his prison medical records for the period between December 5, 2012 and March 6, 2017, he went without his CTM medication for 7 full months, and was in "short" supply of CTM for another 7 months.  Similarly, he went without Naproxen for 5 full months, and had an inadequate supply for another 8 months.  (Doc. 1, p. 4).

Plaintiff alleges that Wexford Health Sources, Inc., ("Wexford") had established a "pharmacy protocol" under which the prison pharmacy technician was to fax medication orders to the vendor pharmacy, and prison nursing staff should call the pharmacy if the medication was not delivered within 1 working day. (Doc. 1, p. 3).  Medications were to be issued to the inmate-patient within 24 hours.  *Id.*  He claims that prison staff failed to abide by these procedures.  (Doc. 1, p. 12).

The body of the Complaint consists of 8 pages listing over 200 transactions

relating to Plaintiff's medication refills, failures to dispense his medications or refill his prescriptions, his encounters with Defendants and other officials regarding his medication needs, discrepancies between his official medical records and Plaintiff's own documentation of what medication he actually received or did not receive, and grievances he filed. (Doc. 1, pp. 4-11). This summary begins with November 5, 2013, where Plaintiff notes that Boswell Pharmacy sent 28 Naproxen tablets to Lawrence, which Plaintiff's "MARS"[1] states were dispensed to him on November 10, 2013, but which Plaintiff never received. (Doc. 1, p. 4). In December 2013, Plaintiff's medical records reflect a 3-day gap in his supply of Naproxen. The medical records for late 2013 also showed Naproxen was dispensed to Plaintiff on certain dates, but he claims he never got it. *Id.*

Plaintiff proceeds to outline similar problems throughout the years of 2014-2017, ending with a December 10, 2017 entry. (Doc. 1, pp. 5-11). He describes "gaps" during which he was not supplied with Naproxen or CTM, ranging from 2 days to 64 days for Naproxen, and from 1 day up to 114 days at a time for CTM. *Id.* Plaintiff filed several "emergency" grievances to the warden complaining about the delays in refilling his medications, in April 2014, June and August 2015, May 2016, and in February, March, and October 2017. Each grievance was either denied or yielded no response.

Plaintiff also describes a number of problems with the sick call procedure, including cancellation of his sick call passes and encounters with sick call nurses

---

[1] Plaintiff never explains the meaning of this acronym, but the Court presumes it is a reference to his official prison medical records.

who either refused to give him medications or reported that his medications had not been received. Plaintiff filed several grievances over the sick call issues, in August and November 2015, March and May 2016, and February and June 2017. (Doc. 1, pp. 7-10).

Plaintiff's factual narrative includes few references to the named Defendants. The Warden is mentioned only in connection to the grievances Plaintiff sent to him. Nurse Practitioner Phillippe, at a July 13, 2015, medical appointment, allegedly refused to discuss Plaintiff's need for CTM. (Doc. 1, p. 6). On August 6, 2015, Phillippe refused to issue him CTM. Again on September 15, 2015, Phillippe refused to give Plaintiff CTM or Naproxen. (Doc. 1, pp. 6-7). During the same period, unidentified sick call nurses and other health personnel similarly refused to give Plaintiff CTM and Naproxen; but others dispensed some medication to him. *Id.* Later, where Plaintiff summarizes his causes of action, he asserts that Phillippe refused to reorder his CTM for a 147-day period from July 14-December 7, 2016. (Doc. 1, p. 12). However, Plaintiff does not mention Phillippe's 2016 refusal to reorder CTM in his chronological factual narrative. He states that he in fact received CTM during that time frame, on July 20, 2106, August 12, 2016, September 28, 2016, October 31, 2016, November 24, 2016, and December 16, 2016. (Doc. 1, p. 9).

Plaintiff notes that the CTM medication was prescribed in order to relieve his sinus headaches. (Doc. 1, p. 12). He does not explain what condition caused him to need Naproxen. He asserts that the Defendants collectively failed to

provide him with these medications in the prescribed doses or in the amounts needed to treat his symptoms. This showed a "conspiracy" among the Defendants to harm him, and their conduct violated Wexford's pharmacy policies and protocols. *Id.* Wexford allegedly permitted its employees to deviate from its policies.

Jackman (pharmacy technician) was responsible for ensuring that medications were ordered and delivered to inmates, under the supervision of McFarland (Director of Nurses). (Doc. 1, p. 13). Because Plaintiff's records allegedly show that 10% to 37% of the medications delivered to Lawrence by Boswell Pharmacy were never delivered to Plaintiff, he claims that Jackman and McFarland failed in their duties. *Id.* Further, the lapses in filling his prescriptions allegedly increased after he filed the lawsuit under Case No. 14-cv-510. Plaintiff claims that this demonstrates "a deliberate conspiracy of retaliation" against him by the Defendants for filing that suit against medical staff. (Doc. 1, p. 13).

As relief, Plaintiff seeks compensatory and punitive damages, as well as unspecified injunctive relief. (Doc. 1, p. 14). He sues Warden Lamb in his official capacity only. (Doc. 1, p. 2).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will

use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment deliberate indifference claim against Cunningham, Jackman, McFarland, Phillippe, and John Doe Medical Personnel, for failing or refusing to provide Plaintiff with adequate supplies of CTM and Naproxen;

> **Count 2:** Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc., for failing to ensure that its employees filled Plaintiff's prescriptions;

> **Count 3:** First Amendment retaliation claim against Cunningham, Jackman, McFarland, Phillippe, and John Doe Medical Personnel, for refusing to fill Plaintiff's prescriptions for CTM and Naproxen after he filed suit against Lawrence medical staff in *Owens v. Duncan*, Case No. 14-cv-510-MJR-SCW (S.D. Ill., filed May 5, 2014).

Each of these counts shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Dismissal of Count 1 – Deliberate Indifference – Individual Defendants**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir.

1997).  "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk.  Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted).  *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015).  However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).  Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

The first component of a deliberate indifference claim is for a plaintiff to show that he suffered from an objectively serious medical condition.  The Complaint is nearly silent on this point.  Plaintiff states that he was prescribed CTM for "sinus headaches," but he does not describe his symptoms, nor does he state how often he experienced such headaches or how frequently he needed to take CTM in order to control them, throughout the lengthy time frame covered in his Complaint.  (Doc. 1, p. 12).  Given the absence of such information, the Complaint does not support a conclusion that Plaintiff was suffering from an objectively serious medical condition at the times he was allegedly shortchanged

on his CTM refills, or that his condition required him to have an uninterrupted supply of CTM. Instead, the Complaint focuses primarily on the records showing when Plaintiff's medication was dispensed (or not provided), and the discrepancies between his official medical records and his own notes. He does not clearly state whether he actually exhausted his supply of pills at any time, such that he was unable to take the medicine when he needed it to relieve symptoms.

As for Plaintiff's need for Naproxen, the Complaint reveals nothing about what medical condition caused Plaintiff to request this medication, let alone whether that condition was serious. Again, there are no factual allegations indicating that it was necessary for Plaintiff to take Naproxen daily, and he does not describe any adverse health effects that may have ensued on any occasions when he had to go without this drug. The mere conclusory allegation that Plaintiff endured "pain and suffering" when his medications were not refilled on the schedule he believed they should be, is not sufficient to state a claim. The Complaint fails to satisfy the objective component of an Eighth Amendment claim.

Turning to the subjective component, Plaintiff does not present any factual allegations to show that Cunningham, Jackman, McFarland, or the John Doe Medical Personnel were aware that he was suffering from an objectively serious medical need for either prescription drug at the various times he requested refills, or that they denied him the medication in disregard of the risk of harm to his health. Accordingly, no viable claim is stated against these Defendants in Count

1.

As for Phillippe, Plaintiff's deliberate indifference claims against her are largely duplicative of the claims that were just dismissed on summary judgment in Case No. 15-cv-1169. This Court specifically found that as to Plaintiff's encounters with Phillippe on July 13, 2015, August 6, 2015, and September 15, 2015, Phillippe was not deliberately indifferent to his condition, because he failed to show that he had a serious medical need requiring CTM at those times. (Doc. 115, pp. 16-17, Case No. 15-cv-1169). Furthermore, Plaintiff had received 19 CTM pills 3 days before he saw Phillippe in August 2015.[2] *Id.* Those dismissed claims regarding the 2015 incidents shall not be reconsidered in this action.

Plaintiff's only other claim involving Phillippe references her refusal to re-order CTM for him for 147 days between July 14 and December 7, 2016. (Doc. 1, p. 12). This allegation alone does not support a deliberate indifference claim, because as noted above, Plaintiff fails to set forth facts to demonstrate that he suffered from an objectively serious condition for which he required CTM at that particular time. Moreover, the factual narrative in the Complaint shows that, despite Phillippe's alleged refusal to give him CTM, Plaintiff in fact received CTM from other medical providers on six different occasions between July and December 2016. (Doc. 1, p. 9). For all these reasons, Plaintiff's deliberate indifference claim against Phillippe in Count 1 fails.

---

[2] The order dismissing Case No. 15-cv-1169 also notes that on September 22, 2015, Plaintiff saw Phillippe and she gave him Claritin (rather than CTM) for sinus pain and a stuffy nose. That action did not constitute deliberate indifference. (Doc. 115, p. 17, in Case No. 15-cv-1169). Plaintiff does not mention that encounter in the instant case, though he does state that a sick-call nurse gave him 9 CTM on September 22, 2015. (Doc. 1, p. 7).

**Count 1** shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Dismissal of Count 2 – Deliberate Indifference – Wexford

Defendant Wexford Health Sources, Inc., ("Wexford") is a corporation that employs most, if not all, of the individual medical-provider Defendants, and provides medical care at the prison. However, Wexford cannot be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action).

In Plaintiff's case, he alleges that Wexford had a policy to ensure that inmates received their medication refills promptly, but that the individual Defendants, including the John Does, failed to follow Wexford's established procedures. This is the opposite of what Plaintiff would need to show in order to hold Wexford liable – his claim is that his rights were violated when prison staff *failed* to abide by Wexford's policies, not that a Wexford policy caused them to be deliberately indifferent to his condition. (Doc. 1, p. 12).

Plaintiff's additional claim that Wexford "permitted" its employees to deviate from the prescription protocols is unavailing. (Doc. 1, p. 12). This is merely

another way of seeking to hold Wexford liable because of its supervisory authority over its staff, or its failure to properly exercise that authority. However, the doctrine of *respondeat superior* (supervisory liability) is not applicable to § 1983 actions, whether it is applied to an individual supervisor or a corporate entity. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted).

Accordingly, the deliberate indifference claim in **Count 2** against Wexford Health Sources, Inc., shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## Dismissal of Count 3 – Retaliation

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). The issue in a retaliation claim is whether the plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be

inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

In this case, Plaintiff alleges that the lapses in refilling his medication increased in frequency during the 40 months after he filed the lawsuit in Case No. 14-cv-510, when compared to the pattern of medication refills in the 16 months before he filed that suit. Based on this calculation, Plaintiff concludes that this history "demonstrate[s] a deliberate conspiracy of retaliation by the defendants" based on Plaintiff's lawsuit. (Doc. 1, p. 13). Statistics and assumptions are not sufficient to support a plausible retaliation claim, however. None of Plaintiff's factual allegations suggest that any Defendant was motivated to withhold medication from him because he filed the 2014 lawsuit. Most of the medication transactions Plaintiff lists involved unnamed nurses or other staff, who would be included under the "John Doe Medical Personnel" umbrella. The Complaint gives no clue as to what number of unnamed individuals might be subject to this claim, and the factual recitation does not suggest that any of these John Does were aware of Plaintiff's 2014 lawsuit, let alone retaliated against him because of it. The same is true for Cunningham, Jackman, and McFarland, none of whom are mentioned by name in Plaintiff's lengthy recitation of his encounters with medical staff to seek medication refills. (Doc. 1, pp. 4-11).

Insofar as Plaintiff claims that Phillippe retaliated against him because of his lawsuit in Case No. 14-cv-510, this Court considered and dismissed that claim in Case No. 15-cv-1169, with reference to Plaintiff's interactions with Phillippe

during 2014 and 2015. (Doc. 115, pp. 20-21, in Case No. 15-cv-1169). The evidence before the Court showed that while Phillippe learned of Plaintiff's lawsuit in 2014, she continued to treat him for a variety of ailments (including ordering Naproxen for him). She saw him on 4 occasions for treatment before she allegedly retaliated against him by refusing to give him CTM in July or August 2015. *Id.* The Court noted that in order to find that Phillippe retaliated against Plaintiff, "a jury would have to conclude that [she] decided not to prescribe CTM because of Plaintiff's lawsuits after having properly treated Plaintiff for over a year." (Doc. 115, p. 21, in Case No. 15-cv-1169).

It is even more implausible to suppose that when Phillippe allegedly declined to reorder CTM for Plaintiff in July-December 2016, more than 2 years after the 2014 lawsuit, she did so in retaliation for the 2014 case. Furthermore, it is questionable whether Phillippe's alleged refusal to authorize Plaintiff's CTM in July-December 2016 would amount to an "adverse action" in the context of a retaliation claim because, as discussed under Count 1, Plaintiff continued to receive CTM from other medical staff during that time. (Doc. 1, p. 9).

For these reasons, Plaintiff fails to state a plausible retaliation claim against any Defendant based on his lawsuit in Case No. 14-cv-510. **Count 3** shall therefore be dismissed without prejudice for failure to state a claim upon which relief may be granted.

Because each of the claims shall be dismissed, Plaintiff's Complaint (Doc. 1) shall also be dismissed without prejudice. However, Plaintiff shall be allowed

an opportunity to submit an amended complaint, if he is able to set forth facts to support one or more of the claims in this action. If the amended complaint still fails to state a claim, or if Plaintiff does not submit an amended complaint, the entire case shall be dismissed with prejudice, and the dismissal shall count as a strike pursuant to § 1915(g). The amended complaint shall be subject to review under § 1915A.

Plaintiff is warned that the Court takes the issue of perjury seriously, and that any facts found to be untrue in the First Amended Complaint may be grounds for sanctions, including dismissal and possible criminal prosecution for perjury. *Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014) (dismissing a lawsuit as a sanction where an inmate submitted a false affidavit and subsequently lied on the stand).

The Court also notes that Plaintiff's request for injunctive relief in the original Complaint appears to have become moot. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995). Only if Plaintiff can show a realistic possibility that he would again be incarcerated at Lawrence under the conditions described in the Complaint, would it be proper for the Court to consider injunctive relief. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)).

**<u>Pending Motion</u>**

Plaintiff has filed a motion for recruitment of counsel (Doc. 6). The dismissal of the Complaint without prejudice raises the question of whether Plaintiff is capable of drafting a viable amended complaint without the assistance of counsel.

There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). If so, the Court must examine "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question . . . is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings,

and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

Plaintiff's motion states that he has sent 5 letters to attorneys, but has been unsuccessful in obtaining counsel on his own. (Doc. 6, p. 1). He does not attach copies of any correspondence. Those efforts may be considered reasonable.

As to the second inquiry, Plaintiff states that he is a college graduate. His pleadings are organized and coherent, and his extensive history as a *pro se* litigant demonstrates that he is articulate and capable of stating the relevant facts and his legal claims. He asserts that he is in need of recruited counsel because this case will require expert testimony. This may be true in the event that an amended complaint survives threshold review, but this case has not yet progressed to the stage where an expert would be required. At this point, Plaintiff needs only to revise his Complaint to address the deficiencies pointed out in this order, if facts exist to support his claims. Therefore, the recruitment of counsel is not warranted at this time and the motion (Doc. 6) is **DENIED** without prejudice. The Court will remain open to appointing counsel as the case progresses.

## Disposition

**COUNTS 1, 2, and 3** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. Further, the Complaint (Doc. 1) is **DISMISSED** without prejudice for failure to state a claim upon which relief may

be granted.

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file his First Amended Complaint within 28 days of the entry of this order (on or before March 5, 2018).  It is strongly recommended that Plaintiff use the form designed for use in this District for civil rights actions.  He should label the pleading "First Amended Complaint" and include Case Number 17-cv-1387-DRH.  The amended complaint shall present each claim which Plaintiff wishes to pursue in a separate count as designated by the Court above.  In each count, Plaintiff shall specify, *by name*,[3] each Defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that Defendant.  Plaintiff should state facts to describe what each named Defendant did (or failed to do), that violated his constitutional rights.  New individual Defendants may be added if they were personally involved in the constitutional violations.  Plaintiff should attempt to include the facts of his case in chronological order, inserting Defendants' names where necessary to identify the actors and the dates of any material acts or omissions.

An amended complaint supersedes and replaces the original Complaint, rendering the original Complaint void.  *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004).  The Court will not accept piecemeal amendments to the original Complaint.  Thus, the First Amended Complaint must

---

[3] Plaintiff may designate an unknown Defendant as John or Jane Doe, but should include descriptive information (such as job title, shift worked, or location) to assist in the person's eventual identification. For clarity, Plaintiff is encouraged to designate unknown individuals separately, for example, "Jane Doe Nurse #1," Jane Doe Nurse #2," and so on.

contain all the relevant allegations in support of Plaintiff's claims and must stand on its own, without reference to any other pleading. Should the First Amended Complaint not conform to these requirements, it shall be stricken. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. Failure to file an amended complaint shall result in the dismissal of this action with prejudice. Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

If Plaintiff files an amended complaint that does not conform to the instructions set forth in this Order, this case shall be subject to dismissal with prejudice for failure to comply with an order of the Court. *See* FED. R. CIV. P. 41(b). Plaintiff may also incur a "strike" within the meaning of § 1915(g) if his amended complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted. No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff elects to file a First Amended Complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to

keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

Judge Herndon
2018.02.05
08:30:36 -06'00'

**UNITED STATES DISTRICT JUDGE**