IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES OWENS,

         Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC.,
LORI CUNNINGHAM SHINKLE,
LORI JACKMAN, JOHN COE,
WILLIAM MCFARLAND,
DEDE BROOKHART, and
JULIA PETTY,

         Defendants.

Case No. 3:17-CV-1387-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on the motions for summary judgment on the issue of exhaustion of administrative remedies filed by Defendants DeDe Brookhart, Lori Cunningham Shinkle, and Julia Petty (Doc. 63) and by Defendants John Coe, Lori Jackman, William McFarland, and Wexford Health Sources, Inc. (Doc. 64). For the reasons set forth below, the motions are granted in part and denied in part.

## BACKGROUND

Plaintiff James Owens is an inmate of the Illinois Department of Corrections (IDOC), currently housed at Taylorville Correctional Center. On December 26, 2017, Owens filed this action, pursuant to 42 U.S.C. § 1983, seeking damages for alleged deprivations of his constitutional rights while he was housed at Lawrence Correctional Center (Doc. 1). Specifically, Owens claims that between December 21, 2012, and April 4,

2017, he experienced lapses in his medications at least 39 times, with each lapse lasting between 1 and 64 days (Doc. 19 at p. 4). Owens asserts that the delay in receiving his medications caused him unnecessary pain and suffering (*Id.*).

After the filing of a Second Amended Complaint (Doc. 19) and the Court's screening of the complaint pursuant to 28 U.S.C. § 1915A (Doc. 20), Owens is proceeding on one count of Eighth Amendment deliberate indifference against all Defendants for failing or refusing to provide him with adequate supplies of Naproxen, Mobic, Chlorpheniramine (CTM), and Claritin.

Defendants consist of various employees of the IDOC and its medical services contractor, Wexford Health Sources, Inc. In his Second Amended Complaint, Owens states that he his suing Wexford for disregarding its medication protocol and delaying his access to prescribed medication (Doc. 19). He further alleges that Healthcare Unit Administrator Lori Cunningham and Medical Director Dr. Coe were responsible for ensuring compliance with healthcare protocols and were personally informed by Owens of the delays in receiving his medications (*Id.*). Owens is suing Lori Jackman, under the supervision of the Director of Nurses, Defendant William McFarland, for failing to provide him with medications as prescribed by his doctors (*Id.*). Finally, Owens alleges that Assistant Warden of Programs/ADA Coordinator DeDe Brookhart and Counselor Julia Petty were responsible for investigating inmate issues brought to their attention, but failed to do so (*Id.*).

Between December 2012 and May 2017, Owens submitted somewhere between 120 and 140 grievances to the Administrative Review Board (ARB). Only a fraction of

those grievances are relevant to the claims in this case. And, Defendants argue, zero of them properly exhausted the administrative review process as to each named Defendant. For that reason, Defendants assert, Owens's claims must be dismissed.

Owens, on the other hand, claims that he properly exhausted his administrative remedies by submitting numerous grievances and following the Illinois Administrative Code's procedures in place at the time he filed them (Docs. 70, 72). Thus, he argues, Defendants' motions for summary judgment should be denied.

### RELEVANT GRIEVANCES

After reviewing the extensive record, the Court finds the following grievances to be relevant to both Owens's claims and Defendants' motions for summary judgment.

#### 1.    April 20, 2014

On April 20, 2014, Owens submitted an emergency grievance to the warden, also known as the Chief Administrative Officer (CAO), at Lawrence stating that Defendant Dr. Coe had prescribed him CTM 4 mg tablets, with instructions to take one tablet by mouth four times a day (Doc. 63-4 at p. 2). Owens complained he had been requesting a refill for over a month by sending kites (notes) to the Healthcare Unit Pharmacy at least once per week (*Id.*). He also sent kites to the Healthcare Unit Administrator, but to date he had not received the requested refill (*Id.*). On April 21, 2014, the CAO marked the grievance as a non-emergency and noted he should submit the grievance in the normal manner (Doc. 63-4 at p. 2). Owens appealed the decision to the ARB, which received it on May 2, 2014 (*Id.* at p. 1). On July 31, 2014, the ARB provided a response to Owens, stating that because the grievance was deemed non-emergent by the warden, he "must go

through normal grievance procedure." (*Id.*). The ARB instructed Owens to provide a copy of his grievance and responses from the counselor, Grievance Officer, and CAO (*Id.*).

### 2.   August 21, 2015

Owens submitted two emergency grievances to the CAO on August 21, 2015. In the first, Owens complains that he sent multiple requests to Dr. Coe for a new CTM prescription but did not receive it until nearly two months later (Doc. 65-2 at p. 4). He further states, in both grievances, that he told the warden about the delay in receiving his medications and that the warden said he would inform the Healthcare Unit Administrator about the issue (*Id.* at p. 5). However, to date, he still had not received his medications. The CAO determined an emergency was not substantiated on August 26, 2015, and Owens appealed to the ARB on September 4, 2015 (*Id.* at p. 2). The ARB returned the grievances and told Owens to provide a copies of his grievances and responses from the counselor, Grievance Officer, and CAO (*Id.*).

### 3.   September 15, 2015

Owens submitted an emergency grievance to the CAO on September 15, 2015, stating that he submitted a request slip on July 7, 2015, for a renewal of his CTM prescription because it was about to expire (Doc. 63-7). He continued to request his CTM from Dr. Coe and a nurse practitioner in August and September 2015, to no avail (*Id.*). The CAO marked this grievance as a non-emergency and told Owens to submit it in the normal manner (*Id.*). Owens appealed to the ARB, which responded on October 2, 2015, by telling him to provide a copy of his grievance and responses from the counselor, Grievance Officer, and CAO, "if timely" (*Id.*).

4.      **May 8, 2016**

Owens submitted another emergency grievance on May 8, 2016, complaining he had been out of his medications for 14 days (Doc. 63-8 at p. 2). Owens further stated his prescription was not due to run out until August 2016, so there was no reason for an interruption in his medication other than the Healthcare Unit's desire to save Wexford money (*Id.*). The CAO determined the grievance was not an emergency on May 9, 2016, and Owens appealed to the ARB on May 19, 2016 (*Id.* at p. 3). The ARB returned the grievance with instructions to provide a copy of his grievance and responses from the counselor, Grievance Officer, and CAO, "if timely" (*Id.*).

5.      **February 28, 2017**

On February 28, 2017, Owens filed an emergency grievance again complaining of a delay in receiving his medication refills (Doc. 63-9 at p. 3). Owens asserted that he sent requests to the Healthcare Unit and Assistant Warden Brookhart concerning his lack of medication, to no avail (*Id.*). The CAO found this grievance did not constitute an emergency on March 3, 2017; Owens appealed on March 15, 2017; the ARB returned the grievance on March 29, 2017, indicating Owens needed to provide the Grievance Officer and CAO's response (*Id.* at pp. 2-3).

6.      **March 10, 2017**

On March 10, 2017, Owens again complained in an emergency grievance about the delay in receiving his medication refills (Doc. 65-2 at p. 17). The grievance mentions that Owens sent a kite to Assistant Warden Brookhart about the situation, again to no avail. The CAO determined an emergency was not substantiated on March 13, 2017, and Owens

appealed on March 22, 2017 (*Id.* at p. 16). The ARB told Owens to provide the Grievance Officer and CAO's response to his grievance (*Id.*).

### 7. October 17, 2017

On October 17, 2017, Owens filed a regular, non-emergent grievance in which he again grieves not receiving his medication in a timely manner (*Id.* at p. 19). In this grievance, he mentions that Defendant Jackman, under the supervision of Defendant McFarland, is responsible for ordering and distributing inmate medications on time (*Id.*). Counselor Petty received the grievance on October 25, 2017, but did not respond until January 5, 2018, stating that, according to HCUA Cunningham, Owens was to continue to submit medication refill requests through the Healthcare Unit (*Id.*). There is no evidence that Owens submitted his grievance to the Grievance Officer, the CAO, or the ARB after Counselor Petty responded.

### LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v.*

*Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

"To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. Under *Pavey v. Conley*, "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008).

### *Illinois Administrative Code*

The grievance procedure for inmates of the IDOC is laid out in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq.* Under the Code, there are two pathways an inmate can take with regard to grievances. If the grievance pertains to an issue that is not an emergency, the inmate must first file a grievance with the counselor within 60 days of the discovery of an incident. *Id.* § 504.810(a). The grievance form must contain factual details regarding what happened, when, where, and the name of each person who involved in the complaint. *Id.* at 504.810(c). While this provision does not preclude an offender from filing a grievance when the names of individuals are not known, he or she must include as much descriptive information about the person as possible. *Id.*

Grievances that are unable to be resolved through the counselor are then sent to

the Grievance Officer. *Id.* at § 504.820(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." *Id.* at § 504.830(e). The Chief Administrative Officer then reviews the findings and recommendation of the Grievance Officer and advises the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the response from the Chief Administrative Officer, he or she can file an appeal the decision to the Administrative Review Board. *Id.* at § 504.850(a). The appeal must be received by the ARB within 30 days after the date of the CAO's decision. *Id.* The ARB then must submit to the Director a written report of its findings and recommendations. *Id.* at § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* at § 504.850(e).

The other path an inmate can take is to request a grievance be handled on an emergency basis by forwarding the grievance directly to the CAO. *Id.* at § 504.840. Under the version of the Code in effect at the time Owens submitted his grievances, if the CAO determines "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender, the grievance shall be handled on an emergency basis." 20 ILL. ADMIN. CODE § 504.840(b) (2014). The CAO shall then expedite the review of the grievance and inform the inmate as to what action shall be taken. 20 ILL. ADMIN. CODE § 504.840(c) (2014).

DISCUSSION

## I.    Grievance Procedure

Defendants first argue that Owens failed to properly exhaust his administrative remedies because he failed to follow the grievance procedure laid out in the Illinois Administrative Code. Specifically, Defendants contend that Owens did not resubmit his emergency grievances through the normal grievance process once the CAO determined they did not constitute an emergency. Instead, he appealed the CAO's determination directly to the Administrative Review Board. Thus, because Owens did not exhaust his administrative remedies, his lawsuit is barred by the PLRA.

A recent opinion by the Seventh Circuit Court of Appeals disposes of this argument. In *Williams v. Wexford Health Sources, Inc.*, the plaintiff filed two emergency grievances regarding Wexford's failure to treat his severe vision issues in his left eye. *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 830-31 (7th Cir. 2020). The warden disagreed that the grievances constituted emergencies and checked a box with the pre-printed statement directing Williams to "submit this grievance in the normal manner."[1] *Id.* Williams appealed to the ARB, which returned at least one of the appeals after checking a box on the form that told Williams to provide responses from his counselor, the Grievance Officer, and the CAO. *Id.* at 831. Williams then filed a *pro se* complaint under 42 U.S.C. § 1983 in federal court. *Id.* Wexford moved for summary judgment on the grounds that Williams failed to exhaust his administrative remedies before filing suit. *Id.*

---

[1] This is the same statement found on the grievances submitted by Owens.

The district court concurred with Wexford and found that because Williams did not re-file his grievances through the standard grievance process after they were denied emergency status, he failed to exhaust. *Id.*

The Seventh Circuit Court of Appeals disagreed. First, the Court observed that at the time Williams filed his grievances in 2016, the Code was silent as to what should happen when the Warden concludes a grievance is not an emergency. *Id.* at 832. Before the Code was amended on April 1, 2017, to fill this gap, "nowhere in the Code did it say that an inmate who invoked the emergency process in a non-frivolous way had to start all over again with the standard procedure whenever the warden concluded that no emergency existed." *Id.* at 833. And although a prisoner must properly go through all the steps offered by a prison, "this does not mean that the inmate must go beyond the established system and guess at some other way of attracting the attention of the prison authorities." *Id.* at 833-34. Second, the Court noted the importance of transparency in the grievance procedure. *Id.* at 834. "This helps everyone: the institution is better able to investigate and resolve grievances if they are presented under a well-understood system, and inmates are better able to comply with institutional expectations if the rules are clear." *Id.*

For these reasons, the Court held that Williams exhausted the remedies that were available to him at the time. *Id.* "The competent authorities, including the warden and the ARB, did not have the right to move the goal posts while Williams was in the middle of his case and suddenly announce that special new requirements applied to him." *Id.* at 835. The Court finally indicated that the outcome might be different if an inmate

frivolously asserts that his grievance is an emergency or if the ARB merely asks for additional information rather than requiring the inmate to go through the normal grievance procedure. *Id.*

Here, Owens filed multiple emergency grievances regarding delays in receiving his medication that the CAO determined were not substantiated emergencies. He then appealed these grievances to the ARB, which returned the appeals because they lacked a response by the counselor, Grievance Officer, and CAO. Under the prior version of the Code, as interpreted in *Williams*, the Court finds that Owens exhausted the administrative remedies that were available to him at the time. Furthermore, Owens did not frivolously assert that his grievances were emergencies, even though the CAO ultimately disagreed with that characterization. Accordingly, the Court finds that Owens exhausted his administrative remedies with regard to his April 20, 2014, August 21, 2015, September 15, 2015, May 8, 2016, February 28, 2017, and March 10, 2017 grievances.

He did not, however, fully exhaust his October 17, 2017 grievance. That grievance, which was submitted through the normal grievance procedure, contains only a response from Counselor Petty. There is no evidence in the record that the grievance was then reviewed by the Grievance Officer, the CAO, or the ARB. Accordingly, the Court finds that the October 17, 2017 grievance was not fully exhausted.

## II.     Identification of Defendants

Defendants next argue that they were not referenced by name in Owens's grievances, thus, the grievances failed to put the facility on notice of any improper conduct.

Under the Illinois Administrative Code, an inmate is required to provide "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE §504.810(c). This does not, however, preclude an inmate from filing a grievance when the names of individuals are not known. Rather, the offender must include as much descriptive information about the individual as possible. *Id.* The Seventh Circuit has interpreted this as requiring the inmate to provide names only to the extent practicable. *See Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010).

Here, Owens clearly identified Defendants Wexford, Dr. Coe, Brookhart, and Cunningham in his properly exhausted grievances. Although he never explicitly mentioned Cunningham's name, Owens stated several times that he sent kites to the Healthcare Unit Administrator regarding his lack of medication, and Cunningham was the Healthcare Unit Administrator (*See* Doc. 19; Doc. 63 at p. 16). Thus, the Court finds that Owens adequately described Cunningham in his grievances.

Owens did not, however, identify Defendants Jackman, McFarland, or Petty—or describe them in any fashion—in any grievance except for his October 17, 2017 grievance. Because Owens failed to properly exhaust his October 17, 2017 grievance, the Court finds that these Defendants are entitled to summary judgment.

## CONCLUSION

For these reasons, the motions for summary judgment on the issue of exhaustion of administrative remedies filed by Defendants DeDe Brookhart, Lori Cunningham

Shinkle, and Julia Petty (Doc. 63) and by Defendants John Coe, Lori Jackman, William McFarland, and Wexford Health Sources, Inc. (Doc. 64) are **GRANTED in part and DENIED in part**.

Defendants Julia Petty, Lori Jackman, and William McFarland are **DISMISSED without prejudice**.

This case shall now proceed on Count One against Defendants DeDe Brookhart, Lori Cunningham Shinkle, John Coe, and Wexford Health Sources, Inc.

IT IS SO ORDERED.

DATED:   July 9, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**