**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JAMES OWENS,**<br>**#K83253,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 17-cv-01387-SPM** |
| **WEXFORD HEALTH SOURCES, INC.,**<br>**LORI CUNNINGHAM SHINKLE,**<br>**JOHN COE, and**<br>**DEDE BROOKHART,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff James Owens, an inmate in the Illinois Department of Corrections, filed this action under 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Owens claims that while housed at Lawrence Correctional Center ("Lawrence") there were delays in receiving refills of medication prescribed to treat his hip and lower back pain and allergies. (Doc. 19; Doc. 119, p. 1). As a result, he would go for days sometimes weeks without medication. At this point in the case, Owens is proceeding with the following claim:

> **Count 1:**    Eight Amendment deliberate indifference claim against Wexford, Cunningham Shinkle, Coe, and Brookhart for failing or refusing to provide Owens with adequate supplies of Naproxen, Mobic, CTM, and Claritin.

Pending before the Court is a Motion for Summary Judgment filed by Defendants Brookhart and Cunningham Shinkle and a Motion for Summary Judgment filed by Defendants Coe and Wexford Health Sources, Inc. ("Wexford"). (Doc. 102, 105). Owens filed a response in opposition, and Defendants Coe and Wexford filed a reply. (119, 122). Now that this matter has

been fully briefed, and for the reasons set forth below, the Court grants both motions for summary judgment.

RELEVANT FACTS AND ALLEGATIONS

Owen was transferred to Lawrence on December 19, 2012. (Doc. 103, p. 3; Doc. 119, p. 2). While he was there, Owens was treated for various medical ailments, including lower back and hip pain and allergies, which are the maladies at issue in this case.

Owens suffers from daily pain in his left hip and lower back. There is no clear diagnosis for what causes Owens's hip and lower back issues, but the medical records indicate that he has received treatment for sciatica and arthritis. (Doc. 103-4, p. 39, 64; Doc. 103-1, p. 68). To manage his pain, doctors have prescribed Owens Mobic, Meloxicam, Naproxen, and Naprosyn. (Doc. 107-1, p. 11). While at Lawrence, his condition was also treated with cortisone shots and physical therapy. (Doc. 107, p. 9; Doc. 119, p. 5). In 2014, Owens was given access to a cane, and in 2016 he was allowed to use a wheelchair for long distances. (*Id.*).

Owens also has what he identifies as "environmental allergies." (Doc. 119, p. 1). To treat his allergies, he was prescribed Chlorpheniramine ("CTM"), an "antihistamine medication used to treat symptoms associated with common allergies such as sneezing, itchy and watery eyes, runny nose and sinus pain" and Claritin. (Doc. 107-3). Without medication, Owens states he has sinus headaches caused by sinus pressure, which are extremely painful. (Doc. 119, p. 1; Doc. 103-1, p. 73).

During the periods alleged, November 5, 2013 through April 19, 2017, the medical records confirm that Owens did not receive a continuous uninterrupted supply of an antihistamine to treat his allergies and pain medicine to treat his lower back and hip pain. (*See generally* Doc. 103-4; Doc. 103-5). There would be delays from the time that Owens would take

the last pill until he received a refill. He asserts that these repeated lapses in these medications resulted in his conditions going untreated for days, sometimes weeks. Owens claims he experienced pain and suffering and "the psychological frustration of not being able to get [his] medication." (Doc. 103-1, p. 74).

In addition to receiving pain and antihistamine tablets through his prescription, Owens would on occasion receive tablets of both medications at Nurse Sick Call.  (Doc. 107-3). Owens testified that, as far as he knew, pain medicine and antihistamines were also available for purchase at the commissary. (Doc. 103-1, p. 79). However, he was unable to purchase either medicine because his money went to costs associated with litigating his other civil cases, which included copying and mailing fees. (*Id.* at p. 131-132).

Owens was transferred from Lawrence to Robinson Correctional Center on January 19, 2018. (Doc. 103-2, p. 1). He continues to take Zyrtec to treat his allergies and Naproxen to treat his hip and lower back pain. (Doc. 103-1, p. 87; Doc. 119, p. 3).

## LEGAL STANDARDS

### *I. Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs motions for summary judgment. "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012) (quoting FED. R. CIV. P. 56(a)). *Accord Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7th Cir. 2014). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

## II. Eighth Amendment Deliberate Indifference

The Eighth Amendment prohibits cruel and unusual punishment and deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (citation omitted). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

In order to prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The first consideration is whether the prisoner has an "objectively serious medical condition." *Id. Accord Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Hammond v. Rector*, 123 F. Supp. 3d 1076, 1084 (S.D. Ill. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant

injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of serious harm") (internal quotation marks omitted) (emphasis added).

The second consideration requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Id*. at 653. A plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles*, 771 F.3d at 409. Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citing *Gayton*, 593 F.3d at 620).

Finally, in cases, such as this, where a plaintiff alleges delay of care, rather than denial, a delay in medical treatment will constitute "an Eighth Amendment violation only if the delay was 'objectively, sufficiently serious' enough to constitute the 'denial of the minimal civilized measures of life's necessities.'" *Johnson v. Obaisi*,  No. 16 cv 4046, 2020 WL 433872, at *7 (N.D. Ill. Jan. 28, 2020) (quoting *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996)). The plaintiff must "offer verifying medical evidence that the delay (rather than the inmate's underlying condition) caused some degree of harm." *Williams v. Liefer,* 491 F. 3d. 710, 715 (7th Cir. 2007) (internal quotations and citations omitted).

ANALYSIS

## *I. Deliberate Indifference Claim Against Dr. Coe*

### a. Res Judicata

Defendant Dr. John Doe was the Medical Director at Lawrence from April 30, 2013 through June 20, 2017. (Doc. 107-3). Dr. Coe argues that the claims brought against him concerning denial or lapses in medication from 2012 through 2015 are barred by the doctrine of res judicata. (Doc. 107, p. 14). Dr. Coe points to Case No. 15-cv-01169, in which Owens previously brought allegations regarding receiving inadequate medication for joint pain and sinus congestion against Dr. Coe. *Owens v. Duncan,* No. 15-cv-01169-MJR-SCW (S.D. Ill. *filed* Oct. 21, 2015) ("*Duncan*"). In that case, Chief Judge Reagan entered summary judgment in favor of Dr. Coe finding that there was no genuine issue of fact and that a reasonably jury would likely find that Dr. Coe provided adequate care to Owens's medical needs. *Duncan,* Doc. 115. Because the same issues regarding failing to refill medication were already litigated, Dr. Coe argues that the claims against him for care or lack thereof during the time period of 2012 through 2015 are barred and cannot be litigated again.

In response, Owens argues that the Court in *Duncan* "did not address the facts concerning the gaps in my [pain] medication…which shows this issue was not previously litigated." (Doc. 119, 32). He also asserts that his current claim against Dr. Coe is not the same previously litigated. In *Duncan,* Owens argues his allegations were that Dr. Coe did not supply him with a new prescription for Naproxen. In this case, he is asserting that Dr. Coe:

> [I]n his official capacity as medical director at Lawrence he was responsible for setting policy, insuring [sic] compliance with healthcare protocols, federal and state statutes, rules and court decisions; as well as for supervising and training the healthcare staff under his control, so he could be and is sued in his official capacity for failing to properly train and supervise the medical staff under his control as well as for his personal acts and omissions when I informed him of the violations of pharmacy protocol.

Page 6 of 21

(Doc. 119, p. 40).

The doctrine of res judicata or claim preclusion precludes parties from relitigating claims that were or could have been raised in a prior action in which there was a final judgment on the merits. *Highway J Citizens Grp. v. United States Dep't of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006). The three requirements for res judicata are: "(1) an identity of the parties or their privies; (2) an identity of the causes of actions; and (3) a final judgment on the merits." *Id.* (quoting *Cent. States, S.E. & S.W. Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d 624, 628 (7th Cir. 2002)). If these requirements are fulfilled, res judicata "bars not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action." *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338 (7th Cir. 1995).

Here, there is no dispute that the requirement of identity of parties has been met as Dr. Coe was a defendant in the present case and *Duncan*, which were both prosecuted by Owens, as the sole plaintiff. The issue is whether the second element, identity of the causes of actions, has been satisfied. When considering identity of the causes of action, the Court reviews whether the claims advanced in both cases are "based on the same core of operative facts." *Matrix IV, Inc., v. Amer. Nat'l Bank and Trust Co. of Chi.,* 649 F. 3d 539, 547-48 (7th Cir. 2011).

The Court finds that the claims advanced against Dr. Coe in this case and *Duncan* are based on same operative facts.[1] In both cases, Owens alleges that he was denied medication for back and hip pain and sinus congestion associated with allergies while housed at Lawrence Correctional Center. Additionally, both cases outline the same set of facts and provide a series of dates in which Owens was provided an inadequate number of pills and experienced delays in receiving refills. He also asserts in both cases that he sent grievances, sick-call slips, and various

---

[1] The Court noted early in this litigation that two other cases filed by Owens, which were ultimately consolidated into Case No. 15-cv-1169, raised virtually identical claims to the present case. (Doc. 9, p. 3; Doc. 15, p. 4).

requests to alert Defendants of the issue but the Defendants ignored his requests for assistance. Specifically, as to Dr. Coe, Owens alleges in both cases that he was first treated by Dr. Coe for hip pain and sinus congestion on February 13, 2014, when Dr. Coe prescribed Owens CTM and ordered Naproxen. (Doc. 119, p. 3-4); *Duncan,* Doc. 35, p. 3. He again requested medication from Dr. Coe on June 10, 2015, requested CTM from Dr. Coe on July 16 and 23, 2015, sent a letter to Dr. Coe requesting medications on September 4, 2015, and filed an emergency grievance #1522 naming Dr. Coe on September 15, 2015.[2] (Doc. 119, p. 14-15; Doc. 35, p. 6-8).

In the response to the motion for summary judgment filed in *Duncan*, Owens mainly made assertions against Dr. Coe regarding the CTM prescription, that he sought renewal of the prescription and was denied and also made Dr. Coe aware of lapses in the CTM medication, which were ignored. *Duncan,* Doc. 86, p. 20. Owens also claimed, however, that he was without his pain medicine, Naproxen, for at least five full months and had lapses in its distribution after it was prescribed. *Id.* He stated that Dr. Coe "as the medical dir[ector] was responsible for [overseeing] Wex[ford] proc[edures] were followed." *Id.* Owens also claimed that Dr. Coe was responsible for "reviewing my chart to make sure I was rec[eiving] my meds." *Id.* In granting the motion for summary judgment, Chief Judge Regan found that there was no evidence to support the claim that Dr. Coe acted with deliberate indifference in refusing to issue Owens a new CTM prescription or regarding Owens's lapses in medication. *Duncan,* Doc. 115, p. 15-16.

While the holding in *Duncan* mainly discusses the allegations against Dr. Coe regarding the CTM prescription for sinus issues, Chief Judge Reagan ultimately concluded that "[n]o jury could reasonably find that Defendants were deliberately indifferent to Plaintiff's serious medical

---

[2] Owens states that this grievance was filed September 16, 2015, in his response to the motion for summary judgment. The Court notes that Grievance #1522 attached as an exhibit is dated September 15, 2015, and in the Amended Complaint in *Duncan,* Owens states Grievance #1522 was filed on September 15. (Doc. 119-1, p. 67); *Duncan,* Doc. 35, p. 8. The Court presumes that the discrepancies in dates was a clerical error and considers these grievances the same.

needs…in which they administered Plaintiff's medications or treated him." *Id.* at p. 23. Contrary to Owens's argument, allegations regarding pain medication were before the Court in *Duncan* and decided in Dr. Coe's favor.

In this case, Owens has broadened his timeline of events and claims that from November 2013 through April 2017, he had lapses in medications prescribed to treat his back and hip pain and sinus congestion caused by environmental allergies and instances where he received an inadequate number of pills. (Doc. 119, p. 1). Owens alleges that he informed Dr. Coe regarding the lapses in his medication, and he "refused to intervene and compel the medical staff to provide [Owens] with medications [he] was prescribed." (Doc. 119, p. 31). He also asserts a new legal theory and sues Dr. Coe in his official capacity for failure to train and supervise employees, as well as in his individual capacity for failing to act when Owens informed him of the violations of pharmacy protocols. Regardless, as stated above, Owens reasserts nearly the same factual allegations and is once again claiming that Dr. Coe did not "make sure" that Owens received his medications, both to treat his pain and sinus congestion. *See Duncan,* Doc. 86, p. 20.

It makes no difference that Owens attempts to pursue his claim against Dr. Coe under a different legal theory. Res judicata "prevents a party from 'splitting a single cause of action [or]…using…several theories of recovery as a basis for separate suits.'" *Alvear-Velez v. Mukasey,* 540 F. 3d 672, 677 (7th Cir. 2008) (quoting *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1365 (7th Cir.1988). Owens's Eighth Amendment claim in *Duncan* and this case are based on essentially the same facts, and the second element has been met.

Finally, in *Duncan,* Dr. Coe received a final judgment on the merits. As discussed above, Chief Judge Reagan granted summary judgment in favor of Dr. Coe regarding his alleged deliberate in difference in denying and delaying medication to treat *both* Owens's sinus

congestion and hip pain. *See Qualls v. NIU Bd. Of Tr.,* 272 F. App'x 512, 513-14 (7th Cir. 2008) ("summary judgment is a final judgment on the merits for purposes of claim preclusion").

As all three requirements are met, summary judgment is granted to Dr. Coe on Count 1 for claims of deliberate indifference from 2012 through 2015 as barred by the doctrine of res judicata. *See Nevada v. Unites States,* 463 U.S. 110, 129-30 (1983) (a final judgment is finality as the claim in controversy and "any other admissible matter which might have been offered for that purpose").[3]

### b. Claims from 2016-2017

The Court also grants summary judgment in favor of Dr. Coe for deliberate indifference regarding the lapses in medication that occurred from 2016 through 2017. Although contested by Dr. Coe, the Court will assume that the pain Owens experienced from his sinus headaches and hip and lower back rose to a level that constitutes a serious medical condition. (Doc. 119, p. 1; Doc. 103-1, p. 73). *See Grieveson v. Anderson,* 538 F. 3d 763, 779 (7th Cir. 2008) ("[a] delay in the provision of medical treatment for painful conditions – even non-life-threatening conditions – can support a deliberate-indifference claim so long as the medical condition is sufficiently serious or painful") (internal quotations and citations omitted). Owens has not, however, presented any evidence demonstrating that during this time frame Dr. Coe was aware that Owens continued to have repeated delays in receiving medication refills and then deliberately disregarded a risk of harm to his health.

The only notification that Owens allegedly provided to Dr. Coe, post 2015, is a request slip sent to Dr. Coe on March 25, 2017. (Doc. 119, p. 41). To support this assertion, Owens

---

[3] Owens claims in the Second Amended Complaint that from December 21, 2012 through April 4, 2017, he had repeated lapses in his prescriptions. (Doc. 19, p. 4). In *Duncan,* Owens's allegations of inadequate medication only span from February 2014 through October 2015. Owens could have brought allegations against Dr. Coe for alleged deliberate indifferent conduct in relation to his medications that occurred prior to filing of the Amended Complaint in *Duncan* in December 2015.

references his Second Amended Complaint, in which he states he sent a request slip asking for medication to "the medical director." (*Id.* citing Doc. 19, p. 12). Owens does not, however, provide evidence that Dr. Coe actually received this request slip. There is not a copy of the request slip in the record, and Dr. Coe states in his affidavit that he does not receive sick call requests from inmates. (Doc. 107-3). Dr. Coe cannot be held liable, in his individual capacity, for failing to act to correct Owens's medication problems when there is no evidence supporting the allegation that he received or read Owens's request slip. *See Karim v. Obaisi,* No. 14 C 1318, 2017 WL 4074017, at *9 (N.D. Ill. Sept. 14, 2017)(citing *Keller v. Elyea*, 496 F. App'x 665, 667 (7th Cir. 2012) (upholding summary judgment where the plaintiff failed to provide evidence that the doctor had reviewed the plaintiff's letters)).

The Court also agrees with Dr. Coe that by missing days of over-the-counter medications Owens was not exposed to a serious risk of harm. (Doc. 107, p. 17). Owens has failed to produce verified medical evidence demonstrating the delays caused him injury. *See Knight v. Wiseman,* 590 F. 3d 458, 466 (7th Cir. 2009) ("the action will not lie unless the plaintiff introduces verifying medical evidence that shows his condition worsened because of the delay"). Owens argues that he has been diagnosed with serious medical needs that mandated treatment with medication, and his "conditions got worse when the medication refills were interrupted on multiple occasions." As a result, he experienced pain and suffering and his condition deteriorated, as he now uses a cane and wheelchair to maneuver. (Doc. 119, p. 45). These assertions are insufficient to demonstrate an issue of fact to be determined by a jury. Evidence of Owens's "diagnosis and treatment, standing alone, is insufficient." *Williams*, 491 F. 3d at 715. Furthermore, Owens "own testimony that he experienced untreated symptoms during the delay" and that a lack of pain medication caused his mobility to worsen does not qualify as verifying

medical evidence." *Lisle v. Eovaldi,* No. 16-cv-00422-NJR, 2020 WL 1287947, at *7 (S.D. Ill. Mar. 18, 2020) (quoting *Johnson,* 2020 WL 433872, at *7). Owens has not offered any expert testimony corroborating his assertions that his health suffered from the delay, and he does not point to any medical record from which it could reasonably be determined that delays in medication exasperated his conditions. *See Cole v. Lemke,* 2019 WL 1227787, at *3 (N.D. Ill. Mar. 15, 2019) ("[s]imply stating that a delay in treatment caused harm is insufficient"). Despite the delays, his treatment has not changed, and he still continues to take an over-the-counter antihistamine, Zyrtec, to treat his allergies and Naproxen for his hip and lower back pain. (Doc. 103-1, p. 87). Without medical evidence that the lapses in medication were detrimental to his health, there is no genuine issue of material fact that would preclude summary judgment in favor of Dr. Coe for his personal conduct. Thus, summary judgment is granted to the claims against Dr. Coe in his individual capacity for the denial of medication from 2016-2015.

Owens's official capacity claim against Dr. Coe for failing to properly train and supervise the medical staff under his control resulting in Eighth Amendment violations from 2016 through 2017 also does not survive the summary judgment. (Doc. 119, p. 40). A suit against Dr. Coe, acting in his official capacity as an employee of Wexford, is no different than suing Wexford itself. *See Clay v. Downs,* No. 12 C 1593, 2014 WL 4100154, at *5 n. 1 (N.D. Ill. Aug. 20, 2014) (citing *Holloway v. Delaware Cty. Sheriff,* 700 F.3d 1063, 1071 (7th Cir.2012) (suing an employee in his official capacity is the same as suing the organization that employs him)). *See also Hill v. Shelander,* 924 F. 2d 1370, 372 (7th Cir. 1991) (noting that official capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent") (internal quotations and citations omitted). Owens is suing Wexford for allowing employees to disregard pharmacy policies and procedures and for failing to properly

train employees. (Doc. 119, p. 42). Thus, it is redundant to bring failure to supervise and failure to train claims against both Dr. Coe in his official capacity and Wexford. As discussed below, Owens has failed to present evidence so that a reasonable jury could conclude that a Wexford policy caused any alleged constitutional violation, and therefore, summary judgment is granted as to the official capacity claim against Dr. Coe.

## II. Deliberate Indifference Claim Against Wexford

In favor of summary judgment, Wexford first contends that Owens's claims of medication delays and lapses occurring between 2012 through 2015 are prohibited under the doctrine of collateral estoppel, also known as issue preclusion. (Doc. 107, p. 12). Wexford points to *Duncan* and states that the issues in *Duncan* and the present case involve the same claims – failing or refusing to provide Owens medication for joint pain and sinus congestion. (*Id.* at p. 13).

Next Wexford argues that if Owens's claims are not barred by collateral estoppel, then he still cannot prevail. First, the conditions afflicting Owens cannot be considered serious medical needs. Furthermore, Owens is essentially alleging that individual medical providers did not follow professional judgment and instead intentionally violated existing practices and policies. Thus, Wexford states that without showing that an individual medical provider was deliberately indifferent, he cannot establish liability on the part of Wexford.

Collateral estoppel, "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Collateral estoppel applies if (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was

essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action. *Havoco of Am., Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303, 307 (7th Cir. 1995).

The Court does not find that Owens's claims against Wexford are barred by collateral estoppel. As Wexford points out, Chief Judge Reagan in *Duncan* ruled that Defendants:

> [S]ustained their burden of demonstrating the lack of any genuine issue of material fact and an entitlement to judgment as a matter of law on Plaintiff's deliberate indifference claims. A reasonable jury could only conclude that *these Defendants* adequately treated Plaintiff and tended to his medical needs as necessary.

*Duncan,* Doc. 115, p. 17-18 (emphasis added). The holding in *Duncan* only addressed the personal conduct of the individual defendants named in that case, which did not include Wexford or Wexford personnel in their official capacities. A finding that individual staff members provided constitutionally adequate care is not the same as concluding that institutional policies "are themselves deliberately indifferent to the quality of care provided." *Glisson v. Ind. Dep't of Corr.,* 849 F. 3d 372, 378 (7th Cir. 2017). *See also Burton v. Ghosh,* 961 F. 3d 960, 972 (7th Cir. 2020) ("[i]ndividual liability is not a prerequisite for a *Monell* claim" against Wexford). Thus, Owens's claim against Wexford is not barred by collateral estoppel.

That being said, the Court finds that summary judgment shall be granted in favor of Wexford. When asserting a claim against a corporate entity such as Wexford, the "central question is always whether an official policy, however expressed…caused the constitutional deprivation." *Glisson,* 849 F. 3d at 379.  Owens has presented no evidence that a lack of training or supervision of medical staff on the part of Wexford resulted in the delays and lapses in allergy and pain medication and again, as discussed above, he has not offered verifying medical evidence that the delay caused injury.

Owens argues that Wexford is liable for deliberate indifference for allowing employees to disregard pharmacy protocols and procedures, as well as for failing to properly train employees. (Doc. 119, p. 42). He claims that Wexford permitted its employees to knowingly deviate from its pharmacy protocols. Specifically, Owens points to the following practices by employees conducted in violation of Wexford pharmacy policies: (1) failing to have inmates sign designated stickers upon receipt of medication and then subsequently failing to place the signed sticker on the medication administration records ("MAR"); (2) falsifying the MARs; and (3) failing to deliver medications within three days of their delivery from Boswell Pharmacy. (*Id.*).

In support of his argument Owens heavily relies on the Boswell Pharmacy Records. (Doc. 119-1, p. 29-38). He points to the fact that there are instances where the prescriptions listed in the Boswell Pharmacy Records as being filled do not appear in the MARs as actually being distributed to him at Lawrence. Owens further relies on the Boswell Pharmacy Records to show that prescriptions were not dispensed within three days of delivery in violation of pharmacy protocols. Owens also claims it is evident that his MARs were falsified based on the November 2013 MAR. He asserts that the November MAR documents that he was given 28 pills of Naproxen on November 10, 2013, but that this is clearly fabricated because the Boswell Pharmacy Records show that the prescription was not even filled until November 15, 2013. (Doc. 119, p. 42).

None of the examples cited to by Owens demonstrates that Wexford inadequately trained or failed to supervise its medical providers and that such failings caused delays in dispensing his refills. First, it is only speculation to assume that a discrepancy between the Boswell Pharmacy Records and the MARs is an error attributed to Wexford staff. Second, Owens does not provide an evidentiary bases to support his allegation that medications were not delivered within three

days of receipt by Lawrence. Owens assumes that the prescriptions are mailed the same day as the "fill date" listed in the record, but there is no evidence explaining Boswell Pharmacy's filling and mailing procedures or how long it takes for the mail to arrive to Lawrence once they are sent from the pharmacy facility.

Third, as to the allegations regarding lack of signatures, it is unclear how not having inmates sign for their medications would cause Owens to not receive his medication refills in a timely manner. Lastly, as to the claim that staff falsified records, Owens has misread his documents regarding the MAR from November 2013. The Bowell Pharmacy Records submitted by Owens document that a prescription for "Naproxen 500MG TAB" for a quantity of 28 was filled on November 5, 2013, not November 15, 2013. (Doc. 119-1, p. 29). For an unexplained reason, the "ORG Date," which the Court interprets to mean that date the medicine was prescribed by a medical provider, is recorded as November 6, after the November 5 fill date, but the issues with the dates on the Boswell Pharmacy Records do not show falsification on the part of Wexford staff. Nor does it demonstrate how lack of training or supervision caused him to experience a delay in his medications.

As stated, none of these examples speak to the training provided to Wexford staff and how a lack of training or supervision resulted in untimely refills. *See J.K.J. v. Polk Cty.,* 960 F. 3d 367, 377 (7th Cir. 2020) (there must be a causal link between the entities conduct and the deprivation of federal rights). Thus, there is no genuine issue of fact regarding whether a practice or policy of Wexford caused a constitutional violation.

Finally, citing the dicta from *Shields v. Ill. Dep't of Corr.,* Owens argues that a *respondeat superior* claim should be allowed to proceed against Wexford pursuant to Section 1983. (Doc. 119, p. 43-44) (citing 746 F.3d 782, 789-796 (7th Cir. 2014)). The Court expressly

dismissed this claim when conducting a preliminary review of Owens's Complaint and First Amended Complaint. (Doc. 9, p. 12-13; Doc. 15, p. 7). In the Second Amended Complaint, Owens again raised a *respondeat superior* claim against Wexford (Doc. 19, p. 17-18), but the claim was not designated by the Court as a count and so deemed dismissed. (Doc. 20, p. 4). Because this claim was dismissed, Owens cannot reinstate it now in his response to Defendants' motion for summary judgment.

Regardless, Wexford still cannot be held vicariously liable for the conduct of employees. Although *Shields* questioned whether *respondeat superior* liability should continue to be foreclosed in Section 1983 cases involving corporations, that case did not overrule prior case law. The law in this Circuit continues to be that claims under *respondeat superior* are not viable in the context of Section 1983. *See Wilson v. Wexford Health Sources, Inc.,* 932 F. 3d 513, 521 (7th Cir. 2019). Accordingly, summary judgment is granted as to Wexford.

### III. Deliberate Indifference Claim against Brookhart and Cunningham Shinkle

Defendant Dee Dee Brookhart was the Assistant Warden of Programs at Lawrence from February 3, 2016 until January 1, 2019. (Doc. 103, p. 7; Doc. 119, p. 3). As the Assistant Warden of Programs, Brookhart supervised all various departments, including healthcare. She was responsible for ensuring the general availability of the healthcare unit such that the unit is open, available to incarcerated persons, and staff. (*Id.*). Defendant Lori Cunningham Shinkle has been the Health Care Unit Administrator at Lawrence since December 2015. (Doc. 103, p. 3; Doc. 119, p. 2). In her role as Health Care Unit Administrator, she directs, coordinates, and reviews the activities of the healthcare operations in conjunction with the Medical Director and the Nursing Director. (Doc. 103, p. 6; Doc. 119, p. 3). They both argue that there is no evidence that they had personal involvement in any constitutional violations alleged by Owens. Brookhart

states that there is no evidence that she personally spoke with Owens and contends that Owens wrongfully identifies her, as in his deposition he described her race as African American, and she is Caucasian. Both Defendants further point out that there is no evidence demonstrating that Owens suffered harm due to the delay in medication.

Owens argues that he notified Brookhart of issues with his medication by speaking to her directly. He also sent her request slips. (Doc. 119, p. 35). In response to Brookhart's assertion that he has identified the wrong individual, Owen states that Brookhart has a dark complexion, and he mistook her race as African American. As to Cunningham Shinkle, Owens contends that he filed grievances regarding his medication that were reviewed by Cunningham Shinkle, putting her on notice of his issues. He also sent her requests slips. Owens asserts that a reasonable jury could conclude that both Brookhart and Cunningham Shinkle knew that there were repeated delays in receipt of his medication, and they turn a blind eye.

Again, assuming that Owens suffered from a serious medical condition, Owens has not shown that Brookhart and Cunningham Shinkle had knowledge of and then deliberately disregarded a serious risk to his health. As to Brookhart, no reasonable juror could conclude that she was aware of Owens's medication issues. First, Owens asserts that he verbally spoke with Brookhart on August 18, 2015, in her office, and then again on February 24, 2017, March 15, 2017, March 25, 2017, and September 20, 2017. (Doc. 119, p. 15, 19, 35). However, whomever this person was that he spoke to, it could not have been Brookhart, as she did not start working at Lawrence until February 2016, and Owens claims their first meeting occurred in August 2015. (Doc. 110, p. 1; Doc. 119, p. 3).

Owens also states he sent Brookhart request slips on February 19 and 27, 2017, and July 25, 2017 regarding his medication issues. (Doc. 119, p. 19, 35). In support of this allegation, he

cites to two emergency grievances dated February 28, 2017 and March 10, 2017, in which he grieves he wrote the February requests to Brookhart. (Doc. 119-1, p. 90, 93). Both grievances were determined not to be emergencies by the chief administrative officer, and it appears they were sent directly to the Administrative Review Board. Nothing on the grievances indicates that they were received or read by Brookhart. There is also nothing in the record indicating that Brookhart received and read any requests sent to her or otherwise had knowledge of Owens's situation. *Johnson v. Snyder,* 444 F.3d 579, 584 (7th Cir. 2006) (finding that the fact the plaintiff sent a letter or letters to the director was "insufficient to create a genuine issue of material fact where there was no evidence that the director had read the communications or otherwise had subjective awareness of the plaintiff's condition) (overruled on other grounds)). Thus, a reasonable juror could not find that Brookhart had actual knowledge of Owens's complaints and then ignored his requests for assistance.

As for Cunningham Shinkle, Owens states that she was put on notice that his medication was being delayed because she reviewed the grievances he filed. He cites to the following eight grievances: #1406, #1510, #1515, #1608, #1703, #1704, #1706, and #1730. Grievances #1406, #1510 and #1515 were filed before Cunningham Shinkle became the Health Care Administrator in December 2015. (Doc. 103, p. 3; Doc. 119, p. 2; Doc. 119-1, p. 59). There is also no indication that Cunningham Shinkle reviewed Grievances #1608, #1704, and #1706. (Doc. 119-1, p. 82, 90, 93). Cunningham Shinkle did review Grievance #1703. In this grievance, Owen grieves a conflict between his law library pass and his sick call pass to retrieve his medication. (*Id.* at p. 88). He asks that his blister packs be distributed during "med line" or at the cells. Owens does not state that he has not been receiving his medication on time or that he was suffering from pain.

Out of the eight grievances cited to by Owens, the only grievance in which he complains that he has not received his refills on time resulting in gaps of time without medication and was also reviewed by Cunningham Shinkle is Grievance #1730 dated October 17, 2017. (Doc. 119-1, p. 97). He states that he requested his medication refills on September 27, 2017, but did not receive them until October 14, 2017 and was left without his meds for over a week. In response, the counselor writes that "according to HCUA Cunningham Shinkle," Owens was to continue to submit refill requests in the healthcare unit mailbox. Cunningham Shinkle confirms in her affidavit that in 2017, she did provide grievance responses to counselors when grievances related to medical care. (Doc. 103-3, p. 4). In drafting her responses, she would review the inmate's medical chart and MAR and speak to the Director of Nursing and Pharmacy Technician. The counselor would then rewrite her response on the grievance sheet. (*Id.*).

Owens has presented a single grievance that alerted Cunningham Shinkle to his medication problems.[4] In response, she investigated his claim and directed him to continue following the facility's procedures for medication refills. *Greeno v. Daley,* 414 F. 3d 645, 656 (7th Cir. 2005). The Court does not find that based on this grievance and Cunningham Shinkle's response a reasonable jury could find that Cunningham Shinkle acted with deliberate indifference. Owens alleges that he also sent her letters or request slips, but as with Brookhart, there is no evidence of such letters in the record. *See Johnson,* 444 F. 3d at 584. Thus, there is nothing demonstrating Cunningham Shinkle had knowledge of facts from which she could infer that Owens was at a substantial risk of serious harm and then ignored that risk. *See Whiting v. Wexford Health Sources, Inc.,* 839 F. 3d 658, 662 (7th Cir. 2016).

And finally, as discussed above, even if it could be reasonably inferred that Brookhart

---

[4] The Court further notes that Owens claims that he had lapses in medication from "[d]uring the period of 11-5-13 through 4-19-17," and this grievance was filed four months after the alleged events. (Doc. 119, p. 1).

and Cunningham Shinkle knew that Owens was repeatedly not receiving a continuous supply of his medication and had to wait between refills, he has not presented the required medical evidence demonstrating that the delay caused him harm. Accordingly, the motion for summary judgment filed by Defendants Brookhart and Cunningham Shinkle is granted.

DISPOSITION

For the reasons stated above, the Court **GRANTS** the Motion for Summary Judgment filed by Defendants Brookhart and Cunningham Shinkle. (Doc. 102). The Court also **GRANTS** the Motion for Summary Judgment filed by Defendants Wexford and Coe. (Doc. 105).

Accordingly, this case is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants Brookhart, Cunningham Shinkle, Wexford, and Coe, and against Plaintiff Owens and to close this case.

**IT IS SO ORDERED.**

**DATED:  September 26, 2022**


_s/Stephen P. McGlynn_
**STEPHEN P. MCGLYNN**
**United States District Judge**